[Doc. No. 13]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

ERNEST M. D'ORAZIO, III,

       Plaintiff,

   v.

WASHINGTON TOWNSHIP, et al.,

       Defendants.

Civil No. 07-5097 (RMB)

## **OPINION AND ORDER**

The primary issue before the Court is whether defendants should disclose the identities of two (2) confidential informants who allegedly possess information critical to plaintiff's case.[1] Defendants resist the discovery. After receiving defendants' Motion for Protective Order [Doc. No. 13] and plaintiff's opposition [Doc. No. 14], and holding oral argument, the Court GRANTS in part and DENIES in part defendants' motion.

Fact Background

In or about December 2005 or January 2006 plaintiff started working as a Special Law Enforcement or Class II Officer for the Washington Township Police Department ("WTPD"). This was a temporary appointment that expired on December 31, 2006.

---

[1]Defendants' motion originally addressed three (3) informants. However, the request for the identity of the third informant is now moot because plaintiff's attorney acknowledged at oral argument that she knows the identity of this informant.

Defendants claim that in December 2006 they obtained "intelligence" that plaintiff disclosed confidential police information to two individuals about an undercover drug investigation. Defendants further claim the disclosure compromised their investigation and put the safety of their officers at risk.

On January 23, 2007, Police Chief Muniz issued a "Preliminary Notice of Disciplinary Action" ("Notice") directed to plaintiff. The Notice issued eight (8) charges against plaintiff for violating the WTPD's Rules and Regulations and recommended that plaintiff be dismissed with no possibility of reappointment. Plaintiff appealed the charges and thereafter the parties participated in a multi-day hearing before the Honorable Donald A. Smith, Jr., J.S.C. (retired). On October 16, 2007, Judge Smith issued his finding and recommendation that none of the charges leveled against plaintiff should be sustained. See Exhibit E to defendants' Brief ("Db"). Washington Township has not yet formally adopted or rejected Judge Smith's recommendation.

Plaintiff filed this lawsuit on October 23, 2007. Plaintiff denies he disclosed confidential police information to anyone. Plaintiff also claims he was qualified to be a full-time police officer and he should have been appointed to the position. Plaintiff alleges the reason he was not appointed was because of his "political affiliation." See Complaint [Doc. No. 1] at ¶¶27-30,34. In addition, plaintiff claims that Detective Jason Player

("Player") falsified his police reports, provided false information in a police investigation, testified falsely under oath and violated police policy and procedure. Id. at ¶81. Plaintiff named as defendants Washington Township, Player, Detective Rolando, Richard Sumek (Detective Sergeant in the Narcotics Unit), Rafael Muniz (Chief of Police), Dennis Sims (Corporal) and Paul Moriarity (Mayor). Plaintiff claims defendants violated his first and fourth amendment rights and engaged in a civil conspiracy to deprive him of his constitutional rights.

Defendants claim that in July 2006, Player received information from Confidential Informant ("CI") 1 that Michael Dove ("Dove") was selling drugs at a local restaurant and bar (P.J. Whelihans). See Exhibit I. Player thereafter was put in charge of the Dove investigation. At the moment it is not known what steps, if any, the WTPD or Player took between July and November 2006 to investigate Dove. A key event in the case occurred on December 11, 2006.[2] On that date Player and CI2 participated in an "overhear" with Dove.[3] Player's December 11, 2006 report of the call states:

> I overheard Dove related that he was contacted by Special
> Officer II Ernie D'Orazio after D'Orazio read the
> subjects names that were arrested. Dove stated that

---

[2] The Court acknowledges the record is not clear as to whether this event occurred on December 10 or 11. For present purposes the difference is immaterial.

[3] An overhear is where a police officer and the caller both listen in on a phone conversation so the officer can hear the conversation. See Db at 3 n.1.

3

> D'Orazio told him that he "better watch out" because of
> what happened at PJ's and who was arrested.  D'Orazio
> also stated that the suspects arrested "would probably
> end up with community service for cooperating."  Dove
> also stated that he was "gonna lay low" for awhile, but
> would reach out for the CI at a later date and time.

See Exhibit G.  This conversation was not recorded.  After Player's
report was prepared Detective Rolando was assigned to supervise the
investigation of the plaintiff.  On December 18, 2006, Player and
CI2 participated in another important phone call.  Player's written
report of the recorded call includes the following statement:

> The CI[2] is heard mentioning Special Officer D'Orazio's
> name on numerous occasions and Dove explains how Special
> Officer D'Orazio told him about the arrests at P.J.
> Whelihans.

See Exhibit H.  According to Player, on December 20, 2006, he
received a call from CI3 who told Player he was concerned for his
safety because he was getting calls to the effect that drug dealers
knew he was cooperating with the police.  See Exhibit K.  Player
received a similar call from CI3 on February 15, 2007.  See Exhibit
L.

During the course of discovery plaintiff asked defendants to
reveal the identities of CI1 and CI2.  Plaintiff undoubtedly wants
the information so he can either interview or depose the CIs about
issues relevant to the case.  Further, in order to assure he
received all relevant documents, plaintiff asked Player to produce
a copy of the file directory on his computer.  In addition,
plaintiff asked defendants to produce the audiotape of the December

18, 2006 phone conversation.  Defendants resisted the discovery and thereafter filed their Motion for Protective Order seeking to bar the production of the requested information.

Discussion

Since this matter is pending in federal court the privilege issues in the case depend upon the application of Fed. R. Evid. 501.  This Rule provides that in federal question cases the federal common law of privilege applies rather than state law.  Torres v. Kuzniasz, 936 F. Supp. 1201, 1207-08 (D.N.J. 1996).

The outcome of defendants' motion is dependent upon the application of the qualified "informer's privilege" which was discussed in detail in Roviaro v. United States, 353 U.S. 53 (1957).[4]  This privilege belongs to the Government and allows it to withhold the identity of persons who furnish to law enforcement officers information regarding illegal activities.  Id. at 59.  As discussed in Roviaro, the purpose of the privilege:

> ... is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligations of citizens to communicate their knowledge of the commission of crimes to law enforcement officers and, by preserving their anonymity, encourages them to perform that obligation.

Id.[5]  Although Roviaro involved a criminal prosecution it is well-

---

[4]New Jersey has codified the informer's privilege.  N.J.S.A. 2A:84-28.

[5]The privilege does not apply if disclosure will merely reveal the contents of a communication and not the informer's identity.  Id. at 60.  Nor does the privilege apply if the

established that the informer's privilege also applies in a civil case.  See Mitchell v. Roma, 265 F.2d 633 (3d Cir. 1959); Pickel v. United States, 746 F.2d 176, 181 (3d Cir. 1984).  See also Westinghouse Electric Corporation v. City of Burlington, Vermont, 351 F.2d 762, 769 (D.C. Cir. 1965)("[t]here is no logical reason to set up two different privileges, one for civil and one for criminal cases.... The Roviaro balance should be struck in each case, civil and criminal, in deciding whether disclosure 'is essential to a fair determination of a cause'").

There is no fixed rule for determining when an informant's identity must be disclosed.  The decision depends upon a balancing of the public interest in securing information from an informant against an individual's right to adequately prepare his or her claim or defense.  Roviaro, 353 U.S. at 62-63.  Whether an informant's identity must be disclosed depends upon the particular facts of each case, taking into consideration the nature of the claim, the possible defenses, the significance of the informer's identity, and other relevant factors.  Id. at 62.  Ultimately, the decision boils down to the fundamental requirement of fairness.  If an informer's identify "is essential to a fair determination of a cause, the privilege must give way."  Id. at 61.

The person seeking disclosure has the burden to establish the significance of the informant's identity and a specific need for

_____

informer's identity has already been disclosed.  Id.

6

the disclosure. Pickel, supra, 746 F.2d at 181; United States v. Marlens, C.A. No. 93-581 (JEI), 1994 WL 39115 (D.N.J. Feb. 2, 1994). Disclosure is not required if it is simply "of some indirect, casual or remote benefit." Mitchell, supra, 365 F.2d at 637. Nor is disclosure required based on "mere speculation that identification might possibly be of some assistance." United States v. Zolp, 659 F. Supp. 692, 705 (D.N.J. 1987)(citations omitted).

As noted, because every case is fact specific there is no bright line for determining when disclosure is appropriate. What can be stated with some certainty is that the government's mere assertion of an informer's privilege is not binding on a court. United States v. Thomas, 58 Fed. Appx. 915, 918-19 (3d Cir. 2003)(the government's privilege to withhold disclosure of an informant is not limitless). Further, the pendency of an ongoing criminal investigation is not in and of itself a sufficient ground to deny disclosure. United States v. O'Neill, 619 F.2d 222, 229-30 (3d Cir. 1980). In addition, simply because an informer's identify may arguably be relevant to issues in a case does not necessarily mandate that disclosure is required. Id. Other considerations may take precedence such that the production of the informer's identity may be barred. See United States v. Jiles, 658 F.2d 194, 196-199 (3d Cir. 1981), cert. denied, 455 U.S. 923 (1982)(denying disclosure even though the court recognized that the informer's

identity was relevant to some issues in the case).

In Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D.Pa. 1973), the court identified a non-exhaustive list of factors to examine to decide if the confidential results of a police investigation should be produced in discovery in a §1983 civil rights case.  See also Torres v. Kuzniasz, 936 F. Supp. 1201, 1209-10 (D.N.J. 1996). Although Frankenhauser did not specifically address whether an informer's identity, some courts cite to the factors it identified to decide whether an informant's identity should be disclosed.  See G-69, a/k/a DG-2 v. Degnan, 130 F.R.D. 326, 332 (D.N.J. 1990; Hendrix v. Woodhead, C.A. No. 06-3942 (FLW), 2007 WL 2688923, at *3 (D.N.J. Sept. 12, 2007). The Frankenhauser factors are:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether an intradepartmental disciplinary proceeding have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

Due to the fact that the general law enforcement privilege is analogous to the informer's privilege, the Frankenhauser factors

8

are relevant to the Court's analysis in this case.

Because the application of the informer's privilege depends upon a fact intensive analysis, the background and circumstances of each case must be examined to decide if disclosure is appropriate Consequently, the Court will conduct a separate analysis for CI1 and CI2. The Court agrees that its balancing is "difficult and the ingredients of the test will vary from case to case." Frankenhauser, 59 F.R.D. at 344. This accounts for the fact that a Court has substantial leeway in deciding whether to disclose an informant's identity. United States v. Brown, 3 F.3d 673, 679 (3d Cir. 1993).

1. CI1 - #04-06-04

The first step in deciding whether the identity of an informant should be disclosed is to determine the defendant's need for disclosure. The second step is to balance a party's interest in disclosure against the Government's interest in maintaining the confidentiality of its informant. Jiles, supra, 658 F.2d at 197-98. In July 2006, CI1 called Player and advised him that Dove was selling cocaine. See Exhibit I. Although CI1 appears to be the original source of the information that led to the investigation of Dove, CI1's role in this civil case is limited. Aside from the July 2006 phone call to Player, CI1 had no further role in the relevant events involving plaintiff's claims.

Plaintiff argues CI1's identity should be disclosed to test

the credibility of defendants' contention that the WTPD initiated its investigation of Dove's activities in July 2006. However, despite the fact that an extensive investigation has already been done into the relevant background events, and Judge Smith held a hearing at which it heard testimony from most of the principal witnesses in the case, no one has ever questioned that the July 2006 phone call took place. Quite simply, no evidence is presently available to contest the fact that CI1 contacted the WTPD in July 2006 to alert it about Dove's activities. This Court will not require defendants to disclose CI1's identity based merely on plaintiff's conjecture or speculation that the July 2006 phone call never took place. Mere speculation as to the usefulness of an informant's testimony is insufficient to justify disclosure of his or her identity. United States v. Bazzano, 712 F.2d 826, 839 (3d Cir. 1983) (quoting United States v. Estrella, 567 F.2d 1151, 1153 (1st Cir. 1977)); United States v. Jiles, 658 F.2d at 197. If an informant's identity were ordered disclosed every time a plaintiff wanted to pursue a hunch the privilege would be valueless. The important policy considerations that protect an informant's identity are not outweighed by a party's desire to explore a theory that has no factual support, especially where a fairly extensive record has already been developed in the case. A party who merely suspects, without showing a likelihood, that the informant's identify is essential to its case, has not demonstrated that

10

disclosure is essential to a fair determination of the case. United States v. Brown, 3 F.3d 673, 679 (3d Cir. 1993).

Furthermore, the July 2006 phone call is not especially important to the underlying issues in the case. (The call is not even identified in plaintiff's complaint). The key issues in the case revolve around the December 2006 phone calls. Because CI1 did not participate in those calls, his or her identity is not essential to ensuring that plaintiff has a fair opportunity to prepare his case and the Court will not Order that his or her identity be disclosed. See Mitchell, supra, 265 F.2d at 637 (denying disclosure where it "might be of some indirect, casual or remote benefit to the defendant but if so, such elusive benefit is not weighty enough to overcome the public policy against disclosure"); Martens, supra, 1994 WL 39115, at *3(denying the disclosure of the identity of a mere "tipster").

## 2. CI2 #06-14-12

Unlike CI1, CI2 played a key role in the relevant background events. First, CI2 participated in the December 11, 2006 overhear which Player claims tipped him off that plaintiff disclosed confidential information. Second, CI2 participated in the December 18, 2006 phone call with Dove. Although the call was recorded, by all accounts the quality of the audiotape is poor and the transcript is incomplete. In contrast to CI1, CI2 directly participated in the activities central to this case.

11

Starting with an analysis of the importance and relevance of the December 11, 2006 phone call, the Court finds that this is crucial evidence.  This phone call precipitated Player's complaint about plaintiff and triggered Rolando's investigation.  If Player's account of the phone call is accurate (<u>see</u> Exhibit G) then a jury could find there was a legitimate basis to investigate plaintiff. On the other hand, if Player's summary and version of the phone call was inaccurate, or perhaps deliberately misleading, it supports plaintiff's claim that Player was "out to get him." Plaintiff's concern about the accuracy of Player's report is not far-fetched or speculative.  The other  known participant on the December 11, 2006 phone call, Michael Dove, denied he obtained confidential information from plaintiff.  <u>See</u> Plaintiff's Brief, Exhibit 1. Further, Judge Smith found that the charges against plaintiff were unsubstantiated.[6]  Because CI2 participated in the December 11, 2006 phone call, he has first-hand knowledge of what

---

[6]Judge Smith wrote:

> Those charges dealing with release of confidential information concerning narcotic investigations are unsubstantiated.  There is no evidence that D'Orazio knew of any narcotics investigations.   There is also no evidence that D'Orazio revealed the facts or the identities of those arrested at P.J. Whelihans parking lot on December 8,2006.  Nor is there video evidence of D'Orazio's prohibited review of the patrol log.  On the contrary the evidence produced by both sides of this hearing refutes most if not all of the information used as a basis for the dismissal charges.

Exhibit E at 001604.

was said or not said; therefore, his testimony is critical to plaintiff's case.

CI2 is also important to plaintiff's case because he participated in the December 18, 2006 recorded phone call with Dove. Player's summary of this call implicated plaintiff. ("The CI is heard mentioning Special Officer D'Orazio's name on numerous occasions and Dove explains how Special Officer D'Orazio told him about the arrest at P.J. Whelihans." See Exhibit H). Nevertheless, Judge Smith questioned the accuracy of Player's summary (Exhibit E at 001603) and the references to plaintiff. Judge Smith wrote:

> The transcript [December 18, 2006] reveals the opposite of what was attempted. The confidential informant constantly attempts to bring D'Orazio into the conversation by referring to statements attributed to D'Orazio or to Dove and Dove continually refutes them. The transcript for what it is worth appears to be a refutation by Dove of the C.I.'s attempts to have Dove implicate D'Orazio.

As a result of Judge Smith's report, evidence exists to support plaintiff's argument that Player did not accurately describe the contents of the December 18, 2006 phone call. Based on this evidence, plaintiff's inquiry into whether Player had an ulterior motive in investigating him is not speculative. Accordingly, plaintiff has a justifiable basis to explore CI2's version of what Player said to him before, during and after the December 18, 2006 phone call. It is obviously important for plaintiff to know if Player attempted to cajole CI2 to implicate him, or if Player attempted to influence the direction and tone of the December 18,

13

2006 phone call to focus on plaintiff rather than the underlying drug investigation.  CI2 is a critical witness in this regard.

Having established the importance and relevance of the December 11 and 18, 2006 phone calls, the Court will next examine whether there are countervailing interests that outweigh plaintiff's need for the informant's identity.  Although defendants have cited to some general concerns, they have not cited any compelling reason to deny disclosure of CI2's identity.  Even accepting as true the fact that disclosure may generally discourage informants from coming forward in the future, this alone is an insufficient reason to deny disclosure.  Otherwise an informant's identity might never be disclosed.  In an instance such as this where the plaintiff has a specific need to know an informant's identity, and there is no significant reason to deny the disclosure, the general police practice of not disclosing an informant's identity must give way to the superior interest of assuring plaintiff a fair trial.  The Court is mindful that it can take meaningful steps to minimize the disclosure of CI2's identity.  The identity of CI2 can be made subject to the Discovery Confidentiality Order in the case, which limits disclosure to the parties for purposes related to the prosecution or defense of the lawsuit.  The confidentiality provisions in the Court's Order assures that the informant's identity will not be revealed to individuals who the police or CI2 believe have the potential to

14

retaliate against the informant.[7]

Moreover, the Court does not believe the information plaintiff seeks is available through other means.  Plaintiff needs to know if Player's written account of the December 11, 2006 phone call is accurate.  CI2 has first-hand knowledge of this evidence. Plaintiff also needs to know if Player unduly pressured CI2 to implicate him during the December 18, 2006 phone call or perhaps on other occasions.  Aside from Player, CI2 is the only person who knows this information.

Given the importance of CI2's identity to plaintiff's case, his or her active participation in two telephone calls that are at the heart of the case, the fact that the disclosure of CI2's identity will be limited, and the lack of evidence that any harm will result to CI2 if his identity is revealed, the Court will Order the disclosure of CI2's identity.  The Court finds that CI2's identity is essential to a fair determination of plaintiff's case.[8]

---

[7]The Court is not addressing how the informant's identity will be treated at trial.

[8]Defendants' motion addressed two other discovery issues that can be summarily addressed.  Defendants do not have to produce a copy of Player's complete computer directory.  Instead, to the extent not already done, defendants are Ordered to produce all documents regarding Michael Dove and plaintiff.  The documents shall be deemed Confidential under the terms of the parties' Discovery Confidentiality Order.  The Court also Orders defendants to produce to plaintiff a copy of the audiotape from the December 18, 2006 telephone conversation which shall also be designated as Confidential.  (Defendants have already produced a copy of a transcript of the call).  Because the Court has Ordered the disclosure of CI2's identity, there is no justifiable reason

Conclusion

In view of the foregoing, and for all the forgoing reasons, it is hereby ORDERED this 15th day of September, 2008, that defendants' Motion for Protective Order is GRANTED IN PART and DENIED IN PART; and

IT IS FURTHER ORDERED that defendants' request for a Protective Order to bar the disclosure of CI1's identity is GRANTED; and

IT IS FURTHER ORDERED that defendants request for a Protective Order to bar the disclosure of CI2's identity is DENIED. Defendants shall identify for plaintiff CI2's identity and produce to plaintiff a copy of the audiotape from the December 18, 2006 recorded phone conversation; and

IT IS FURTHER ORDERED that to the extent not already done defendants shall produce to plaintiff all documents concerning Michael Dove and plaintiff; and

IT IS FURTHER ORDERED that all discovery Ordered to be produced pursuant to this Order is designated as Confidential pursuant to the parties' Discovery Confidentiality Order and shall be produced no later than September 30, 2008.

                         s/ Joel Schneider
                         JOEL SCHNEIDER
                         United States Magistrate Judge

_____

to deny plaintiff access to the audiotape.

17