UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ERNEST M. D'ORAZIO, III,

        Plaintiff,

     v.

WASHINGTON TOWNSHIP, STEPHEN
ROLANDO, JASON PLAYER, RICHARD
SUMEK, RAFAEL MUNIZ, DENNIS
SIMS, and PAUL MORIARTY,

        Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 07-5097
(JEI/KMW)

**OPINION**

**APPEARANCES:**

The Vigilante Law Firm, P.C.
By:  Jacqueline M. Vigilante, Esq.
99 North Main Street
Mullica Hill, NJ 08062
   and
Ralph Lamar, Esq.
376 Green Lane
Philadelphia, PA 19128
        Counsel for Plaintiff


Barker, Scott & Gelfand
By:  A. Michael Barker, Esq.
     Vanessa E. James, Esq.
Linwood Greene - Suite 12
210 New Road
Linwood, NJ 08221
        Counsel for Defendants

**IRENAS**, Senior District Judge:

    Plaintiff, Ernest M. D'Orazio, III, brings this suit against
the Defendants arising out of his employment as a Special Law
Enforcement Officer for the Washington Township Police
Department.  Plaintiff claims that his failure to be promoted to
full-time law enforcement officer, the investigation into his
alleged revealing of confidential information and his dismissal

from the Washington Township Police Department were
discriminatory and violated his civil rights.  The Defendants
are Washington Township, the former mayor of Washington Township
Paul Moriarty, the former chief of the Washington Township Police
Department Rafael Muniz, the then-chief of the Washington
Township Police Department, and Stephen Rolando, Jason Player,
Richard Sumek and Denis Sims, each officers with the Washington
Township Police Department.

Plaintiff asserts claims under 42 U.S.C. § 1983 of
violations of his First Amendment and Fourth Amendment rights.
Plaintiff also asserts a civil conspiracy claim.  The Defendants
have moved for summary judgment on all claims.  The Court will
grant summary judgment in part and deny summary judgment in
part.[1]

## I.

Plaintiff applied for a position as a Special Law
Enforcement Officer ("SLEO") for the Washington Township Police
Department ("WTPD") in 2004.  In July 2005, Plaintiff was
appointed as an SLEO by resolution of the Washington Township
town council ("Council") and in August 2005 was approved as a
recruit for the Gloucester County Police Academy ("Academy").
(Defendants' Statement of Facts in Support of Motion for Summary
Judgement (SOF) ¶ 54)  Plaintiff attended the Academy from August
2005 through December 2005.  (*Id.* ¶ 60)  After completing his
training at the Academy, Plaintiff began his field training as an

---

[1]The Court has subject matter jurisdiction pursuant to 28
U.S.C. §§ 1331 and 1367.

SLEO and was assigned to solo patrol duty in April 2006. (*Id.* ¶¶ 73, 80)   Prior to Plaintiff's completion of field training, Plaintiff began to seek appointment as a full-time law enforcement officer with the WTPD. (*Id.* ¶ 81)

In April 2006, two SLEOs were promoted to full-time law enforcement officer with the WTPD, but Plaintiff was not. (*Id.* ¶ 83)   In August 2006, two graduates of the Academy were appointed as full-time law enforcement officers with the WTPD. (*Id.* ¶ 140) Neither of the August 2006 appointees had served as an SLEO or previously worked with the WTPD.

On December 8, 2006, the WTPD and other local law enforcement agencies conducted an undercover narcotics operation at a local bar in Washington Township.[2] (*Id.* ¶ 152)   One of the men arrested as part of the operation agreed to serve as a confidential informant ("CI #1") for the WTPD as part of the continuing narcotics investigation. (*Id.* ¶ 153)   On December 11, 2006, Defendant Player and another member of the WTPD engaged in an "overhear"[3] on a call between CI #1 and Michael Dove, an alleged narcotics dealer who was subject to an ongoing investigation by the WTPD. (*Id.* ¶ 156)   On that overhear, Michael Dove allegedly told CI #1 that Plaintiff had revealed information to him about the arrests made on December 8, and that

---

[2] The following is a summary, as asserted by Defendants, of the chronology of the investigation into Plaintiff and his eventual dismissal from the WTPD.  Plaintiff takes issue with many of these facts.

[3] An "overhear" is when a police officer, with the consent of one of the participants in the call, will listen to a telephone conversation.

Plaintiff had warned Dove to limit his illegal activities as the narcotics investigation was ongoing.  (*Id.* ¶¶ 163-164).  This information was the basis for the investigation into Plaintiff.

This information was passed from Defendant Player to his supervisor Defendant Sumek, (*Id.* ¶ 167), who passed it along to Defendant Rolando, an internal affairs officer of the WTPD.  (*Id.* ¶ 168) Eventually Defendant Muniz was notified, and he requested that an internal affairs investigation begin immediately.  (*Id.* ¶ 171) Defendant Muniz also requested that the Gloucester County Prosecutor's Office ("GCPO") investigate any allegations against Plaintiff.  (*Id.* ¶ 174)

On December 18, 2007, Defendant Player attempted to record an overhear between CI #1 and Michael Dove, but due to technical problems the recording was unusable and the content of the conversation is unknown.  (*Id.* ¶ 186-187)

On December 20, 2006, another confidential informant ("CI #2") allegedly spoke to Defendant Player and told him that he was in fear for his own safety and the safety of his family because certain of Plaintiff's acquaintances were making threats towards him.  (*Id.* ¶ 191-193)

That same day, Defendant Rolando advised Plaintiff that the WTPD and the GCPO were investigating Plaintiff.  Rolando and Plaintiff went to the offices of the GCPO, where he was interviewed by Rolando and another member of the WTPD.  (*Id.* ¶¶ 198-200)  Following completion of the interview, it was decided that criminal charges would not be brought against Plaintiff. (*Id.* ¶ 211)

The WTPD decided to continue to pursue its administrative investigation. (*Id.* ¶¶ 213-214)  Defendant Rolando interviewed Plaintiff at the WTPD police station. *(Id.)*  Plaintiff's father was present during the administrative interview at Plaintiff's request. (*Id.* ¶ 216)

Defendant Muniz suspended Plaintiff from the WTPD on December 21, 2006. (*Id.* ¶ 227)

Defendant Rolando issued his internal affairs investigation report on January 8, 2007. (*Id.* ¶ 249) The report referenced, amongst other things, the December 11 overhear, CI #2's discussions with Defendant Player and video surveillance evidence that allegedly showed Plaintiff reviewing an arrest log. Defendant Rolando "concluded that evidence existed to support the conclusion that Plaintiff released police information to civilians, which thwarted a narcotics investigation." (*Id.* ¶ 249)

Based on Defendant Rolando's report, on January 23, 2007, Defendant Muniz recommended that Plaintiff be dismissed from the WTPD with no recommendation of reappointment. (*Id.* ¶ 253)

An administrative inquiry on Defendant Muniz's recommendation commenced on April 18, 2007.  An administrative judge was retained to administer the inquiry. (*Id.* ¶ 254) The administrative judge's report did not sustain any of the charges against Plaintiff, and held that Plaintiff was entitled to be paid for the wages he lost after his dismissal until the end of

his appointment.[4]  (*Id.* ¶¶ 285-286)  The report was sent to the Council for approval on October 23, 2007.  (*Id.* ¶ 314)  No action was taken on the report until March 11, 2009, at which time the report was rejected.  Three Council members voted for rejection of the report, no Council members voted to accept and two Council members abstained.  (*Id.* ¶ 332)

Plaintiff filed his original complaint on October 23, 2007, and an amended complaint on August 24, 2009.  Plaintiff brings multiple claims under 42 U.S.C. § 1983: for violation of his right to political association against each of Defendants Rolando, Player, Sumek, Muniz, Sims and Moriarty, for violation of his right to free speech against each of Defendants Muniz and Moriarty, for violation of his right to be free from unreasonable seizure against each of Defendants Muniz and Rolando, and for ratification of constitutional violations against Defendant Washington Township.  Plaintiff also brings a common law civil conspiracy claim against Defendants Rolando, Player, Sumek, Muniz, Sims and Moriarty.  Defendants filed their joint motion for summary judgment on all claims on March 15, 2010.

**II.**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[4]Because Plaintiff was never reappointed for the 2007 term, the administrative judge held Plaintiff was entitled to be paid for those hours he would have worked from December 21, 2006 to December 31, 2006.  (SOF ¶ 286) Plaintiff was scheduled to work 24 hours during this period and was paid at a rate of $11.25 per hour.  (SOF ¶ 287) This comes to $270.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

The Court first addresses the constitutional claims and then the common law conspiracy claim.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or

other proper proceeding for redress....

42 U.S.C. § 1983.

As stated previously, Plaintiff asserts that his First and Fourth Amendment rights were violated.  Specifically, Plaintiff asserts two First Amendment claims: (1) political association discrimination and (2) retaliation based on Plaintiff's First Amendment protected speech.  Plaintiff also claims that during the investigation into Plaintiff's involvement in the thwarted narcotics case, he was unreasonably seized in violation of the Fourth Amendment.  Lastly, Plaintiff asserts that Washington Township is liable for the First and Fourth Amendment violations under a ratification theory.

The Court addresses each claim in turn.

A.

Plaintiff alleges that he was twice passed-over for a promotion, in April 2006 and August 2006, and was thereafter suspended and ultimately dismissed with no opportunity for reappointment, all because of his political association with Democrats influential within Washington Township.  (Brief of Plaintiff in Opposition to Defendants' Motion for Summary Judgment (Pl's Opp.) 10)

The familiar *McDonell Douglas* burden shifting framework applies.  Plaintiff must establish his prima facie case of discrimination based on First Amendment protected association. Defendants must then put forth a legitimate non-discriminatory

8

reason for each adverse employment action.  Lastly, Plaintiff must put forth evidence supporting an inference of pretext.

To establish a prima facie case of discrimination based on political association under § 1983, a public employee must prove: (1) that the employee worked for a public agency in a position that does not require a political association, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political association was a substantial or motivating factor in the adverse employment decision. *Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir. 1995) (citing *Laskaris v. Thornburgh*, 733 F.2d 260, 265 (3d Cir. 1984), cert. denied, 469 U.S. 886 (1984); *Perez v. Cucci*, 725 F.Supp. 209, 238-39 (D.N.J. 1989), aff'd, 898 F.2d 139 (3d Cir. 1990)). Implicit in the third prong is a requirement that the plaintiff produce sufficient evidence to show the defendant knew of plaintiff's political association. *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 664 (3d Cir. 2002) (citing *Laskaris*, 733 F.2d at 265).

If the plaintiff is able to show his political association is a substantial or motivating factor in the adverse employment decision, the burden shifts to the employer to show "by a preponderance of the evidence that it would have reached the same decision.... even in the absence of the protected conduct." *Mt. Healthy City School District Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977); *Robertson*, 62 F.3d at 599 (citations omitted); *Raniero v. Antun*, 943 F.Supp. 413, 423 (D.N.J. 1996) (citations

omitted).

Once the defendant has articulated a nondiscriminatory reason for the employment action, plaintiff may still prevail by discrediting that proffered reason, either circumstantially or directly, or by adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or substantial cause of the adverse action. *See, e.g.*, *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d Cir. 1994).

In this case the parties do not dispute that political association was not a required aspect of Plaintiff's job.

With respect to the second prong of Plaintiff's prima facie case, contrary to Defendants' arguments, a reasonable factfinder could conclude that Plaintiff had a political party association and each Defendant knew about it.

There is no defined quantum of participation that is required to establish a protected political association - courts have found discrimination based on as little activity as "stuffing envelopes, speaking to individual members of the public, attending political functions and attending at least one campaign rally." *Frangione v. Twp. of Edison*, 2008 U.S. Dist. LEXIS 49577, at *6 (D.N.J. June 24, 2008).  Importantly, family connections have also been considered when determining whether a plaintiff has established his or her political association. *See Goodman,* 293 F.3d at 661.

The Court finds that Plaintiff has demonstrated that there

10

is a genuine issue of material fact as to whether Plaintiff has a
protected political association, even though Plaintiff's
political activities are not vast.  Plaintiff is a registered
Democrat and has been registered to vote since he was the age 18
(Pl's Dep. 55), he has voted in every election since then, (*Id.*),
he has personal connections with a number of people in the
Democratic party, (*Id.)*, and he volunteered for a number of
campaigns throughout his life (D'Orazio Jr. Dep. 26).
Importantly, Plaintiff is a member of a well-known family that
has been involved in politics for many years.  His paternal
grandparents were involved in local political elections (*Id.* 24),
and his father is a well-known figure in Washington Township
politics.[5]  Plaintiff's political activities and those of his
family, viewed in the light most favorable to Plaintiff, is
sufficient to establish that there is a genuine issue of material
fact as to whether Plaintiff maintained a protected political
association.[6]

Plaintiff has established that there is a genuine issue of
material fact as to whether each Defendant knew of Plaintiff's
political association. Either direct or circumstantial evidence

---

[5]Plaintiff's father's property was even used as the campaign
headquarters for Randi Davidson, the then-mayor of Defendant
Washington Township and Defendant Moriarty's opponent in the
Democratic primary.  (*Id.* 33)

[6]The Court will make no ruling on Defendants' assertion that
Plaintiff's Declaration is a "sham affidavit", Defendant's Reply
Brief p. 2, because Plaintiff has presented sufficient evidence
to make a prima facie case even without the affidavit in
question.

of the protected political association is adequate to establish knowledge. *Stephens*, 122 F.3d at 179.

There is direct evidence that each of Defendants Sims, Muniz and Ronaldo had knowledge of Plaintiff's political association. Defendant Sims made comments to Plaintiff acknowledging Plaintiff's political association - calling Plaintiff a "political hack" while Plaintiff was in training at the Academy. (Sims Dep. 20-21). Defendant Muniz told a member of the Council that he did not want to hire Plaintiff because it would appear political in nature. (Scarpato Dep. 12) Defendant Ronaldo testified that he was aware of the political pressures to hire Plaintiff. (Ronaldo Dep. 162). All of these statements, taken in the light most favorable to Plaintiff, establish that these Defendants had direct knowledge of Plaintiff's political association.

There is circumstantial evidence that each of Defendants Sumek, Moriarty and Player had knowledge of Plaintiff's political association. Defendants Moriarty and Sumek each testified that he had personal knowledge of Plaintiff's father's political activities. (Moriarty Dep. 11-13; Sumek Dep. 147) Defendant Moriarty further testified that he had personal contact with Plaintiff's father and knowledge of his political associations. (Moriarty Dep. 11-13.) Because Plaintiff was closely associated with his father, and Plaintiff's political association was in large part based on that relationship, a reasonable factfinder could infer that a person who had knowledge of the father's

12

political association would also have knowledge of Plaintiff's political association.

Defendant Player was in charge of Plaintiff's background investigation before Plaintiff was hired as an SLEO, (SOF ¶ 49), and had personally known Plaintiff for a number of years. (D'Orazio Jr. Dep. 74). Both of these facts made him familiar with Plaintiff and his background. There is also testimonial evidence that Plaintiff's political association was well known within Washington Township and the WTPD. (Dep. Of Sims p. 21). Knowledge by co-workers can be inferred when politics is an important issue in a work place. *See Stephens*, 122 F.3d at 177. A factfinder could reasonably infer from Detective Player's close knowledge of Plaintiff, and the general knowledge in the WTPD of Plaintiff's political association, that Defendant Player had knowledge of Plaintiff's political association.

The Court next discusses the third prong of Plaintiff's prima facie case (causal connection), Defendants' legitimate non-discriminatory reasons, and Plaintiff's evidence of pretext together according to each adverse employment action. To survive summary judgment on the causal connection element, Plaintiff may "prevail by discrediting the proffered legitimate reason, either circumstantially or directly, or by adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or substantial cause of the adverse action." *Stephens,* 122 F.3d at 181 (Causal connection found when plaintiffs were in the top tier of promotion lists and the

employer failed to adequately justify his failure to promote from the lists).  *See also Goodman,* 293 F.3d at 675 (causal connection found when there was a history of significant political patronage at the employer, the promotion decision at issue was clearly made along party lines, the plaintiff had the highest evaluation scores of all candidates, and plaintiff had received nothing but positive commendations); *Suppan v. Dadonna*, 203 F.3d 228, 238 (3d Cir. 2000) (causal connection found when there was evidence that employers had lowered the plaintiffs' hiring scores based on the plaintiffs' political association and the employer admitted that he chose not to hire because of the political activities of plaintiffs).  *Cf. Robertson*, 62 F.3d at 601 (no causation when the there was ample evidence of plaintiff's poor performance at work); *Wheeler v. Twp. of Edison*, 326 Fed. Appx. 118, 123 (3d Cir. 2009)(no causation when plaintiff had not presented evidence that he was more qualified than other candidates that were treated in similar manner).

*April 2006 Failure to Promote*

Plaintiff has not established a causal connection for the April 2006 failure to promote.  Plaintiff, in a limited manner, attempts to both discredit Defendants' proffered reasons for their actions and show that discrimination was more likely than not a substantial or motivating factor in the decision. Plaintiff fails on both attempts.

Defendant Muniz was still a lieutenant at the time of the April 2006 promotions, and no evidence was presented that he was

14

a decision maker in these promotions.[7]  Plaintiff does not contend that any of the other Defendants discriminated against Plaintiff in connection with the April 2006 promotions.

As to Defendant Moriarty, Plaintiff argues that because he shared a letter of recommendation with one of the promoted candidates, (Pl's Opp. 11), he has discredited the proffered reasons for the failure to promote.  This evidence though, even when taken in the light most favorable to Plaintiff, is not enough to discredit the contention of Defendants that the other candidate was superior to Plaintiff.  Many factors are considered in hiring, not just letters of recommendation.

Plaintiff has also failed to show that his protected political association was a substantial or motivating factor in the decision of Defendant Moriarty.  The only evidence supporting Plaintiff's contention is testimony from a member of the Council that he had heard that other members of Council had engaged in discussions with Defendant Moriarty about the promotions and Plaintiff's political association.  (Altamuro Dep. 95-96) Besides the fact that this evidence is hearsay,[8] none of the

---

[7]A member of Council testified that Defendant Muniz did not want his first appointments to be political. (Scarpato Dep. 17) Although Plaintiff asserts this comment relates to the April 2006 promotions, based on fact that Defendant Muniz was not made chief of the WTPD until the Summer of 2006 and and the professed confusion of Councilman Scarpato during his testimony, the Court finds that Defendant Muniz was actually referring to the August 2006 promotions, his first as chief of the WTPD.

[8]Hearsay evidence that would not be admissible at trial are generally not to be considered on summary judgment. *See Blackburn v. United Parcel Service*, 179 F.3d 81, 95 (3d Cir.

other Council members or Defendant Moriarty himself testified to the existence of such conversations.  Plaintiff has presented no other evidence supporting his claim against Defendant Moriarty in regard to the April 2006 promotions.

Because Plaintiff has neither discredited the proffered reasons for his failure to be promoted in April 2006 nor established that his political association was a substantial or motivating factor in that decision, summary judgment will be granted as to the April 2006 promotions.

*August 2006 Failure to Promote*

Plaintiff has not established a causal connection for the August 2006 failure to promote.  Plaintiff again attempts to both discredit Defendants' proffered reasons for the actions and to show that discrimination was more likely than not a substantial or motivating factor in the decision.  Plaintiff fails on both counts.

In this instance though, it is clear that Defendants have shown that even if Plaintiff had met his burden, Defendants have established by a preponderance of the evidence that the same decision would have been made even in the absence of Plaintiff's political association.  Plaintiff was not the most senior SLEO at the time, so he was not due for promotion even had the WTPD promoted an SLEO to full-time law enforcement officer.  (Muniz Dep. 65)  Even the most senior SLEOs at the time were not

_____

1999).

considered ready to be promoted to full-time law enforcement officers, and there were doubts about the readiness of all the SLEOs. (*Id.* 65-66)  Plaintiff was also getting direct feedback that he was not ready to be promoted. (*Id.*)  Defendants have shown that Defendant Muniz used reasonable efforts to hire the best candidate, including interviewing a number of candidates at the Academy. (*Id.* 71-72.)  Both candidates that were eventually selected to be full-time law enforcement officers finished high in their classes at the Academy. (SOF ¶¶ 126, 132)  Plaintiff, on the other hand, finished relatively low in his class. (SOF ¶ 61) Defendants have shown, by a preponderance of the evidence, that even in the absence of his political association, Plaintiff would not have been promoted in August 2006.  Summary judgment will be granted as to the August 2006 promotions.

*Investigations and Dismissal Without Reappointment*

The final instance of alleged discrimination based on political association was the investigation into Plaintiff and his dismissal from the WTPD.  Plaintiff has not presented evidence that Defendants Moriarty and Sims were involved in the investigation and dismissal.  Although Plaintiff alleges in his Amended Complaint that Defendant Sims leveled false charges against Plaintiff, (Amended Complaint ¶ 122), there was no evidence presented by Plaintiff in support of this allegation. Plaintiff has also claimed that his investigation and dismissal was "at the instruction and encouragement of Defendant Moriarty," *Id.* ¶ 134, but besides this allegation Plaintiff has presented

no evidence to link Defendant Moriarty with the investigation or the dismissal.

Plaintiff has further claimed that Defendant Moriarty's failure to investigate the allegations of police misconduct, and his condoning of the charges against Plaintiff and the termination of Plaintiff, were discriminatory against Plaintiff. Besides the mere allegation of discrimination on the part of Plaintiff, there is no evidence that Plaintiff's political association was a substantial or motivating factor in Defendant Moriarty's decision with regard to an investigation of the allegations of police misconduct.  Plaintiff has also failed to discredit Defendant Moriarty's proffered reasons for the action (that he referred any investigation to the GCPO for fear of conflicts of interest).

Defendants Muniz, Rolando, Sumek and Player were each involved in the investigation into Plaintiff and his dismissal. Plaintiff has not adduced direct evidence that discrimination was more likely than not a motivating or substantial cause of the adverse action.  Instead, Plaintiff has attempted to discredit the proffered legitimate reasons of the Defendants by showing that the evidence on which the investigation and dismissal were based was not adequate.

Plaintiff has presented evidence, taken in the light most favorable to him, that the investigation into Michael Dove was pretextual, that the investigation and dismissal was based on fabricated or limited evidence, and that the Defendants knowingly

18

issued reports that contained false information.

The investigation began after the December 11 overhear of the conversation between CI #1 and Michael Dove. The Defendants allege that this overhear was part of an ongoing investigation of Michael Dove. There is scant evidence of such an investigation though, (Plaintiff's Supplemental Statement of Facts ¶¶ 103-09), and Plaintiff has presented evidence that the investigation was pretextual. The fact that Michael Dove was allowed to work at the offices of the WTPD in November 2006, *Id.* ¶ 115, that there was an outstanding bench warrant against him from a different matter that was never executed even though he was in the police station, *Id.* ¶ 112, and that he attended a wedding hosted by one of the Defendants, *Id.* ¶ 113, all serve to discredit the existence of the alleged investigation.

Some of the evidence used against Plaintiff was later contradicted by sworn testimony. Michael Dove testified that he never implicated Plaintiff on the December 11 overhear. (Dove Trans. 249) CI #2 denied under that he ever told the WTPD that he was feeling threatened by Plaintiff's acquaintances. (CI #2 Trans. 32-33) Both of these pieces of evidence were important elements of the investigation into Plaintiff, and served as part of the basis for his dismissal.

It is also clear that false report were submitted by Defendants. Detective Rolando cites a video surveillance tape which allegedly shows Plaintiff reviewing the WTPD arrest log as proof that Plaintiff had knowledge of the names of those arrested

on December 8, 2006.  His internal investigation report stated that a "review of the department's video surveillance indicate [sic] that employee D'Orazio... reviewed the patrol briefing log after [the December 8, 2006] arrests had been made...." Defendant Rolando, though, admitted under oath that he could not tell what Plaintiff was doing in the video.  (Rolando Dep. 94-96)

Defendant Player wrote in his intelligence report on the December 18 overhear that Michael Dove "explain[ed] how Special Officer D'Orazio told him about the arrests...."  Later though, Defendant Player testified under oath that he could not hear what Michael Dove was saying during the failed overhear and that the tape did not capture the conversation.  (Player Dep. 134)

All of this evidence, taken in the light most favorable to Plaintiff, undermines the veracity of the evidence that was the basis for the investigation and dismissal and discredits Defendants' proffered reasons for those actions.  Plaintiff has met his burden to survive summary judgment as to his political association discrimination claims related to the investigation of Plaintiff and his dismissal from the WTPD, but only against Defendants Player, Sumek, Rolando and Muniz.[9]

---

[9]Although Plaintiff's Amended Complaint specifies that he is seeking "back pay, front pay and/or reinstatment," (Amended Complaint ¶ 104), Plaintiff has asserted no basis upon which he could be reinstated as an SLEO or would be due front pay. Plaintiff was never reappointed as an SLEO.  A property interest in one's employment requires "a legitimate claim or entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Plaintiff has no such interest. The maximum amount of compensatory damages available to Plaintiff is $270 in back pay that would be owed to him for the period after his suspension

B.

Counts VII and VIII are each claims that Defendants Muniz
and Moriarty, respectively, subjected the Plaintiff to
discrimination based on the Plaintiff's exercise of his right to
free speech.  Plaintiff argues that Defendants Muniz and Moriarty
terminated Plaintiff because of Plaintiff's "complaining about
the unlawful refusal to hire him based upon political
affiliation...." (Amended Complaint ¶ 144)

The test for establishing a prima facie claim for
retaliation based on exercise of free speech has three parts.
First, plaintiff must show that the activity in question was
protected. *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d
Cir. 1993); *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir.
1983). To be protected, the speech must be on a matter of public
concern, and the employee's interest in expression on this matter
must not be outweighed by any injury the speech could cause to
the interest of the state as an employer in promoting the
efficiency of the public services it performs through its
employees. *Waters v. Churchill*, 511 U.S. 661, 694-95 (1994)
(plurality opinion) (citing *Connick v. Myers*, 461 U.S. 138, 142
(1983), and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Second, plaintiff must show that the protected activity was
a substantial or motivating factor in the alleged retaliatory
action. *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at

---

and before the end of his appointed term.  *See supra* n.4.

287.

Finally, defendant may defeat plaintiff's claim by demonstrating by a preponderance of the evidence that the same action would have been taken even in the absence of the protected conduct. *Id.*

As discussed *supra*, Defendant Moriarty did not take any part in the dismissal of Plaintiff.  Even had Defendant Moriarty participated, Plaintiff has produced no evidence that either Defendants Moriarty or Muniz knew about Plaintiff's speech to members of Council.  Without evidence that the Defendants had knowledge of Plaintiff's speech, Plaintiff could not prove that the speech was a substantial or motivating factor in the Defendants' actions.  Plaintiff's claim fails without such evidence.  Therefore summary judgment is granted on Count VII and Count VIII.

C.

Counts IX and X are each claims that Defendants Rolando and Muniz, respectively, violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

> A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave, and as long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would require some particularized and objective justification.

*United States v. Mendenhall*, 446 U.S. 544.

For purposes of the Fourth Amendment, "an arrest requires

either physical force . . . or where, that is absent, submission to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *Sharrar v. Felsing*, 128 F.3d 810, 819 (3d Cir. 1997). Importantly, *Mendenhall* establishes that the test for existence of a "show of authority" is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person. *Hodari D.*, 499 U.S. at 628.

Plaintiff has not presented evidence to establish that a reasonable person in his situation would have perceived that he was not free to leave, either when he was interrogated at the offices of the GCPO or the WTPD. Although the evidence before the Court on this matter is limited, the facts surrounding the interviews are not in dispute. Plaintiff was asked to be interviewed and complied with the request. He was never put in handcuffs, told that he must remain at the interview areas or in any other way given the impression that his movements were limited. The interview at the GCPO ended when he asked for it to end. Plaintiff's father was allowed to be present for the interview at the WTPD at Plaintiff's request. The assertion, without further evidence, that Plaintiff "was not free to leave" (Declaration of D'Orazio III p 37) does not meet Plaintiff's burden because, as discussed in *Hodari*, the test to determine if a seizure has occurred is an objective one. Plaintiff would reasonably be expected to be aware of his rights in such a

situation and know that he was free to leave, especially in light of the fact that Plaintiff was a law enforcement officer at the time.

Because Plaintiff has not presented evidence that a reasonable person would believe his movements were restricted, Plaintiff has not established that he was seized within the meaning of the Fourth Amendment.  Summary judgment is granted on Counts IX and X.

D.

Count XI is a claim against Defendant Washington Township that it violated Plaintiff's First and Fourth Amendment rights by rejecting the administrative judge's report, failing to investigate the alleged misconduct engaged in by the other Defendants and condoning the alleged misconduct by the other Defendants.[10]

In *Monell v. Dep't of Soc. Servs.*, the Supreme Court held that a municipality cannot be liable under § 1983 under the principle of respondeat superior.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978).  Instead, a municipality can only be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

---

[10]Plaintiff also takes issue with the fact that the Council took two years to act on the report. (Pl.'s Opp. 6)  Plaintiff does not make a Fourteenth Amendment procedural due process claim against Defendant Washington Township, so the timeliness of the Counsel's actions will not be addressed.

official policy, inflicts the injury...." *Id.* The Third Circuit
has held that there are three instances when such liability is
possible:

> First, the municipality will be liable if its
> employee acted pursuant to a formal government
> policy or a standard operating procedure long
> accepted within the government entity, *Jett v.
> Dallas Independent School District*, 491 U.S. 701,
> 737 (1989); second, liability will attach when the
> individual has policy making authority rendering his
> or her behavior an act of official government
> policy, *Pembaur v. City of Cincinnati*, 475 U.S.
> 469, 480-81 (1986); third, the municipality will be
> liable if an official with authority has ratified
> the unconstitutional actions of a subordinate,
> rendering such behavior official for liability
> purposes, *City of St. Louis v. Praprotnik*, 485 U.S.
> 112, 127 (1988).

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

Plaintiff relies on the ratification theory to claim
liability by Defendant Washington Township. (Pl.'s Opp. 36). "An
employee's invidious intent is not imputed to the government
agency even if the employee has discretionary authority." *Holt
Cargo Sys. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 840
(E.D. Pa. 1998). A plaintiff must show "that the municipal
action was taken with the requisite degree of culpability...."
*Martinez v. Koury*, 2008 U.S. Dist. LEXIS 56457, at *11 (E.D. Pa.
July 24, 2008).

The mere acceptance by the Council of the actions of its
subordinates is not enough to satisfy the ratification theory.
Plaintiff has not presented any evidence of either invidious
intent or culpability on the part of Defendant Washington

Township.  Therefore summary judgment is granted on Count XI.

E.

Count XII is a claim against Defendants Muniz, Rolando, Sumek, Sims, Player and Moriarty for civil conspiracy, alleging that "[t]he defendants acted in concert to commit unlawful acts for the purpose of depriving Plaintiff of his constitutionally protected rights and furthered the conspiracy by their own actions." (Amended Complaint 181).

Section 1983, on its own, does not punish conspiracies. Instead, a civil conspiracy claim provides plaintiff a legal mechanism of liability against all defendants without regard to who actually performed the illegal act.  *See Holt Cargo Sys. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998).  In order for a civil conspiracy claim to survive summary judgment, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Royster v. Beard*, 308 Fed. Appx. 576, 579 (3d Cir. 2009)(quoting *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993)).

Plaintiff asserts that the Defendants worked together, but has presented no evidence to support such allegations.  Mere allegations of an agreement will not suffice for a civil conspiracy claim to survive summary judgment.  Therefore summary judgment is granted on Count XII.

IV.

For the reasons set forth above, summary judgment will be

26

granted in full as to Plaintiff's claims that he suffered retaliation based on his First Amendment protected speech, his claims he was unreasonably seized in violation of the Fourth Amendment, his claim against Defendant Washington Township and his civil conspiracy claim.  Summary judgment will be granted in part as to Plaintiff's First Amendment claims for political association discrimination, to the extent that such claims relate to the April 2006 and August 2006 failure to promote.  Summary judgment will be denied in part as to Plaintiff's First Amendment claims for political association discrimination, to the extent that such claims relate to the investigation and dismissal of Plaintiff.  An appropriate Order accompanies this Opinion.[11]


Dated: October 7, 2010

                                    s/ Joseph E. Irenas
                                    **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[11]Plaintiff has also submitted motions in limine to exclude certain expert testimony.  The motions to exclude the testimony of John Mercun and Frank Rodgers are moot as they relate to portions of the case for which summary judgment is being granted. The motion to exclude the testimony of Robert P. Wolfe, Ed.D., M.B.A., will be held until the damages phase of the case.